## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| **Respondent/Plaintiff,** | ) |
| | ) |
| v. | )   **Case No. 11-40085-01-JAR** |
| | )            **15-4863-JAR** |
| RICHARD ADRIAN SANCHEZ, | ) |
| | ) |
| **Petitioner/Defendant.** | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Richard Adrian Sanchez's Motion under 28

U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc.

110).  The Government has responded (Doc. 116) and Petitioner has replied (Doc. 117).  After a

careful review of the record and the arguments presented, the Court denies Petitioner's motion

without an evidentiary hearing.

### I.      Procedural History and Background

On August 30, 2011, Kansas Highway Patrol Trooper Brent Hogelin and Trooper Jarett

Ranieri were monitoring a drug ruse check lane near milepost 322 before the Tallgrass Road exit

on Interstate 70 in Wabaunsee County, Kansas.[1]  The check lane consisted of a set of signs

placed on the shoulder of the highway indicating that a drug check lane was ahead and a drug

dog was being utilized; in fact, there was no drug check lane ahead.[2]  Around 9:00 p.m., the

troopers observed a light blue Chrysler Pacifica exit the highway at the Tallgrass Road exit.[3]

---

[1]Doc. 87, Tr. 11/23/11 Mot. Hr'g at 5–7.

[2]*Id.*

[3]*Id.* at 8, 23.

The Pacifica exited immediately after passing the drug check lane signs.[4]  Tallgrass Road is a rural gravel road with no services.[5]

Thinking it odd that a Missouri-tagged vehicle would be traveling on a rural gravel road at night, and mindful that the Pacifica had exited the interstate at the first opportunity after passing the drug lane signs, Trooper Hogelin followed the vehicle for approximately one mile on Hendricks Road, which is a gravel road with no lighting.[6]  During this time, Trooper Hogelin ran the registration on the vehicle, which was registered to an individual named Arturo Martinez at an address in Kansas City, Missouri.[7]

After observing the Pacifica execute a right turn onto Gooseberry Road without signaling the turn as required by K.S.A. § 8-1548, the troopers activated the emergency equipment and the vehicle came to a stop.[8]  Trooper Hogelin approached the vehicle and made contact with the driver, Sanchez, who provided Trooper Hogelin with an Arizona ID card but no valid driver's license, a violation of K.S.A. § 8-244.[9]  Sanchez was also unable to identify the correct owner of the vehicle, and provided an insurance card for the vehicle that listed Arturo Martinez as the owner.[10]  Trooper Hogelin inquired about Sanchez's travel plans and was told that he was returning someone's car to Kansas City from Arizona after repairs had been completed on the

---

[4]*Id.* at 7.

[5]*Id.* at 7–8.

[6]*Id.* at 9–10, 15.

[7]*Id.* at 11–12.

[8]*Id.* at 12–13.

[9]*Id.* at 17, 24.

[10]*Id.* at 18.

2

vehicle.[11]

Trooper Hogelin returned to his vehicle and ran Sanchez's information through dispatch, which advised that his driver's license had been suspended and that he had two outstanding warrants from Florida and Nevada.[12]  Trooper Hogelin returned to the Pacifica and returned Sanchez's documents to him.[13]  Trooper Hogelin informed Sanchez that he would not be issuing a ticket for driving on a suspended licence, but explained that Sanchez could not legally drive the vehicle and would have to contact a friend.[14]  Trooper Hogelin then stated: "That's all I have. Good luck," and took a step away from the vehicle.[15]

Trooper Hogelin reinitiated contact with Sanchez and asked if Sanchez could answer further questions; Sanchez said he could.[16]  During the ensuing conversation, Trooper Hogelin asked Sanchez if he had anything illegal in the vehicle, and Sanchez responded, "No.  Would you like to check the vehicle?"[17]  The Trooper clarified that he wanted to search the vehicle, not just check it; Sanchez indicated that he understood and agreed to the search.[18]  Trooper Hogelin asked Sanchez to step out of the vehicle, asked for and received permission to perform a pat-down search on his person, and asked him to stand in front of the headlights of the Pacifica while

---

[11]*Id.* at 18–19, 21.

[12]*Id.* at 25.

[13]*Id.* at 28.

[14]*Id.*

[15]*Id.*

[16]*Id.* at 29, 52–53.

[17]*Id.* at 30–32

[18]*Id.* at 32

the search was conducted.[19]

Trooper Hogelin and Trooper Ranieri then searched the vehicle and noticed that several pieces appeared to have been recently removed and a compartment appeared to have been installed along the frame rails.[20]  Based on his training and experience, Trooper Hogelin knew that drugs are often secreted in the frame rails of vehicles, and asked Sanchez if they could take the vehicle to a KDOT facility for a more in-depth search.[21]  Sanchez agreed and sat in the back of the police vehicle while Trooper Hogelin's partner drove the Pacifica.  At the KDOT facility, Trooper Hogelin again asked Sanchez's permission to search the vehicle, which was given.[22]  The subsequent search uncovered approximately three pounds of methamphetamine hidden in the front bumper of the Pacifica.[23]

On September 28, 2011, Sanchez was charged with possession with intent to distribute more than 500 grams of a mixture and a substance containing a detectable amount of methamphetamine.  Petitioner's counsel, Marilyn M. Trubey, filed a motion to suppress evidence obtained from the traffic stop claiming the search was unlawful because Sanchez had not committed a traffic violation.[24]  Petitioner moved this Court to suppress the fruits of the stop, including his statements.

After conducting an evidentiary hearing, this Court denied Petitioner's motion in a

---

[19]*Id.* at 32–33.

[20]*Id.* at 33–35.

[21]*Id.* at 34, 37.

[22]*Id.* at 37–38.

[23]*Id.* at 38–39.

[24]Doc. 14.

written Memorandum and Order.[25]  The Court found that the initial stop was justified because Petitioner committed a traffic violation by failing to signal his turn onto Gooseberry Road, in violation of K.S.A. § 8-1548.[26]  The Court further found that Petitioner voluntarily consented to the search of his vehicle, finding it was "intelligently and freely given."[27]  The Court determined the consent was based on the totality of the circumstances, including that: (1) Trooper Hogelin did not touch Petitioner, threaten him, display his weapon, or speak to him in an aggressive tone before obtaining the initial consent; (2) "[Petitioner] himself volunteered permission to check the car; (3) Petitioner agreed to the search after Trooper Hogelin clarified that he wanted to search the car for drugs, showing Petitioner agreed to a broad search of the vehicle to include areas where drugs could be hidden; (4) "[Petitioner] never stopped the troopers while they were searching nor asked to limit the search"; (5) Petitioner "consented to a more thorough search when the officers asked him if they could take the car to the KDOT facility to take a closer look at it"; and (6) upon arrival at the KDOT facility, "Trooper Hogelin again asked [Petitioner] if they could search the vehicle and he agreed."[28]  Based on all of these factors, this Court found that "[Petitioner] gave valid consent to search and the troopers did not exceed that consent."[29]

Following denial of the motion, Trubey withdrew as counsel and J. Richard Lake was appointed to represent Petitioner.  Lake filed a Motion to Reopen Record regarding the motion to suppress, which was denied as untimely and because no new evidence would come form

---

[25]Doc. 27.

[26]*Id.* at 8.

[27]*Id.* at 13.

[28]*Id.* at 13–15.

[29]*Id.* at 15.

reopening the record.[30]

The Government and Mr. Lake then engaged in plea negotiations, during which the Government extended a plea offer where, in exchange for Petitioner's guilty plea to Count 1 and waiver of appellate and collateral attack rights, the Government would agree to, *inter alia*: (1) not file any additional charges against Petitioner arising out of the facts forming the basis for the Indictment; (2) recommend a sentence at the low end of the applicable advisory Guidelines sentencing range; and (3) recommend that Petitioner receive a three-level reduction to reflect his acceptance of responsibility under § 3E1.1 of the Guidelines.[31]  Petitioner rejected this offer, and elected to go to trial.  Petitioner was subsequently convicted by a jury on Count 1.

Based on the amount of methamphetamine found in the vehicle, the Presentence Investigation Report ("PSIR") reflected a Total Offense Level of thirty-six and a criminal history score of eight, resulting in a Criminal History Category of IV, with an advisory Guidelines range of 262–237 months.[32]  The Government extended a sentencing agreement to Petitioner, where, in exchange for Petitioner's waiver of appellate and collateral attack rights, the government would agree to, *inter alia*: 1) recommend that Petitioner receive a total five-level reduction in his offense level on Count 1 under § 3B1.2 and § 2D1.1(a)(5) of the Guidelines; 2) recommend that Petitioner receive a sentence at the low end of the advisory Guidelines range after applying these reductions, resulting in a recommendation of a 151-month term of incarceration; and 3) permit

---

[30]Doc. 55.

[31]Proposed Plea Agreement, Doc. 111, Ex. 4 at 3–5; Slinkard Aff., Doc. 116, Ex. B.

[32]Doc. 72, PSIR at 12.

Petitioner to appeal if this Court imposed a sentence in excess of 151 months' custody.[33]

Petitioner rejected this offer as well.  No objections were filed to the PSIR, and this Court

ultimately imposed a term of 262 months' imprisonment with a five-year term of supervised

release.[34]

Petitioner appealed his conviction to the Tenth Circuit Court of Appeals.  The court

affirmed his conviction and issued its mandate on February 25, 2014.[35]  Petitioner did not seek a

writ of certiorari from the Supreme Court.  This created a final judgment ninety days after the

date of the Tenth Circuit decision.  The Government acknowledges that Petitioner timely filed

the instant 28 U.S.C. § 2255 within the applicable time period, one year after the date the

judgment becomes final.[36]

## II.   Legal Standards

### A.   General

Under § 2255(a):

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the
> United States, or that the court was without jurisdiction to impose such
> sentence, or that the sentence was in excess of the maximum authorized by
> law, or is otherwise subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the sentence.

If the court does not find that the movant is entitled to relief, based upon an examination of the

---

[33]Proposed Sent. Agreement, Doc. 111, Ex. 4; Slinkard Aff., Doc. 116, Ex. B.

[34]Doc. 74, Order Den. Mot. for Recons. at 2.  Petitioner's sentence was subsequently reduced to 210 months under U.S.S.C. Amendment 782 and 18 U.S.C. § 3582(c)(2).  Doc. 109.

[35]*See United States v. Sanchez*, 553 F. App'x 842 (10th Cir. 2014).  Notably, the issue on appeal was the sufficiency of the government's evidence that he possessed the methamphetamine; Petitioner did not challenge the Court's suppression order in his direct appeal. *Id.* at 844.

[36]*See* 28 U.S.C. § 2255(f).

motion, attached exhibits, and the record, the court must dismiss the motion.[37]  However, unless the motion, files, and record conclusively show that the movant is not entitled to relief, an evidentiary hearing must be held.[38]  A petitioner must allege facts, which if proven, would warrant relief from his conviction or sentence.[39]  If the factual allegations in the § 2255 motion contradict the record, are inherently incredible, or are conclusions rather than statements of fact an evidentiary hearing is not necessary.[40]

Because Petitioner's submissions were filed *pro se*, his pleadings must be construed liberally and not to the standard applied to an attorney's proceedings.[41]  If a *pro se* petitioner's motion can be reasonably read to state a valid claim on which he could prevail, the court should do so despite a failure to cite proper legal authority or follow normal pleading requirements.[42]  However, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[43]  For that reason, the court shall not supply additional factual allegations to round out a petitioner's claims or construct a legal theory on his behalf.[44]

**B.    Ineffective Assistance of Counsel**

---

[37]Rule 4(b), Rules Governing Section 2255 Proceedings for United States District Courts.

[38]28 U.S.C § 2255(b).

[39]*See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996).

[40]*Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Hatch*, 58 F.3d at 1471 ("the allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments).

[41]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[42]*Id.*

[43]*Id.*

[44]*See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

8

Petitioner alleges that he received ineffective assistance of counsel on three grounds: (1) counsel did not attempt to challenge the vehicle search and detention as coercive; (2) counsel did not object to the criminal history score contained in the PSIR; and (3) counsel did not inform Petitioner of or attempt to negotiate an open plea deal.  Claims dealing with the ineffective assistance of counsel are governed under the two-part test enunciated by the Supreme Court in *Strickland v. Washington*.[45]  A petitioner must show (1) that his counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for the deficient performance of counsel, the outcome of the proceedings would have been different, thereby constituting prejudice to the petitioner.[46]

In proving the first prong of the *Strickland* test, a petitioner must demonstrate that the omissions of counsel fell "outside the wide range of professionally competent assistance."[47]  This standard is "highly demanding."[48]  Strategic decisions made by counsel are presumed correct, unless those decisions were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[49]  Judicial scrutiny of the adequacy of attorney performance must be strongly deferential and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[50]  The reasonableness of challenged conduct must be evaluated from the counsel's perspective at the time of the error,

---

[45]466 U.S. 668 (1984).

[46]*See id.* at 688–91.

[47]*Id.* at 690.

[48]*Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[49]*Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

[50]*Strickland*, 466 U.S. at 689.

not in hindsight.[51]

In proving the second prong of the *Strickland* test, a defendant must show that his counsel's deficient performance actually prejudiced his defense.[52]  To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."[53]  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[54]  To determine this, the court must focus on "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[55]

This standard applies specifically to a claim of ineffective assistance during failed plea negotiations.[56]  The two-part *Strickland* test applies to challenges involving rejection of a plea offer resulting in a conviction at trial and a more severe sentence.[57]  "The performance prong of *Strickland* requires a defendant to show that counsel's representations fell below an objective standard of reasonableness."[58]  To demonstrate prejudice in this context, a defendant "must show the outcome of the plea process would have been different with competent advice."[59]  Where a

---

[51]*Id.*

[52]*Id.* at 687.

[53]*Id.* at 694.

[54]*Id.*

[55]*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[56]*Lafler v. Cooper*, —U.S.—, 132 S. Ct. 1376, 1384 (2012).

[57]*Id.*

[58]*Id.* (quotation marks omitted).

[59]*Id.*

defendant claims that his counsel's ineffective advice lead him to reject a plea and go to trial, he must show:

> that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of the intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe that under the judgment and sentence that in fact were imposed.[60]

A petitioner must demonstrate both of the of the *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either is dispositive.[61] "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'"[62]

## III.   Discussion

### A.   Motion to Suppress

Petitioner first alleges that his counsel ineffectively failed to "challenge Sanchez's consent to the search of the vehicle being a result of coercion" and in violation of the Fourth Amendment.[63] Petitioner further alleges that his counsel was ineffective in failing to research the detention issue, and that but for counsel's errors, a reasonable probability exists that this Court "would have suppressed all evidence on a motion in either pretrial or trial stages i.e. at a

---

[60]*Id.* at 1385.

[61]*Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

[62]*Id.* (quoting *Strickland*, 466 U.S. at 697); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

[63]Doc. 110 at 8.

suppression hearing or at trial on rule 29 motion that was a result from the Trooper's obtaining consent under deception."[64]  Petitioner's claim is without merit.

First, review of the record shows that counsel did challenge the consent.  The motion to suppress argues that "the evidence seized from the vehicle, along with any statements attributed to Mr. Sanchez, must be suppressed,"[65] and this Court construed Petitioner's argument as claiming that his consent "was illegal because his consent was not intelligently and freely given."[66]  Moreover, the Government proffers an affidavit by Ms.Trubey asserting that the motion to suppress challenged the nature and scope of the detention as well as the consent to search the vehicle.[67]  As discussed in the Court's order denying the motion to suppress, the Government must present "clear and positive testimony that consent was unequivocal and specific and freely and intelligently given."[68]  The determination of whether valid consent was given is made upon the totality of the circumstances.[69]  And, this Court rejected counsel's thorough challenge to the consent, finding it was valid based on the totality of the circumstances.  Thus, Petitioner cannot succeed on the first *Strickland* prong, as counsel did in fact challenge his consent to search the vehicle.

Second, Petitioner cannot show a reasonable probability exists that his counsel could

---

[64]*Id.* at 10.

[65]Doc. 14 at 3.

[66]Doc. 27 at 13.

[67]*Id.*, Trubey Aff., Ex. A.

[68]*United States v. Pena*, 143 F.3d 1363, 1367 (10th Cir.1998) (quoting *United States v. Angulo-Fernandez*, 53 F.3d 1177, 1180 (10th Cir. 1995)).

[69]*Id.* at 1366.

have successfully challenged the voluntariness of his consent on the basis of the facts he now presents to this Court, namely: (1) "[t]hat the Trooper claimed he could get a warrant regardless if Sanchez did not consent to the search of his vehicle"; (2) "[t]hat Sanchez was ordered to stand in front of his vehicle during his search"; (3) "[t]hat Sanchez could not have his cellular phones during the search"; and (4) "[t]hat Sanchez could not leave after the initial search, because he had to accompany Troopers to KDOT facilities, so they can search further."[70]  However, none of these alleged facts would have provided a basis for Petitioner's counsel to successfully challenge Petitioner's consent.  As noted by the Government, Petitioner's first alleged fact—that the trooper claimed he could get a warrant regardless of whether Sanchez did not consent—never occurred.  In fact, the videotape of the stop shows that from the time Trooper Hogelin told Petitioner, "That's all I have," and "good luck" (18:23), to the time that Hogelin obtained consent from Petitioner to search the vehicle (20:55), Hogelin never told Petitioner he could get a warrant.[71]  Thus, counsel did not ineffectively fail to use the statement to challenge Petitioner's consent as required under either prong of *Strickland*.  Moreover, Petitioner's three other alleged facts happened after Petitioner had already initially consented to the search, so none of these alleged facts could have had any coercive impact on Petitioner's consent.[72]  Because a motion on these facts would not have been successful, Petitioner's counsel did not deficiently perform in a

---

[70]Doc. 111 at 11.

[71]11/23/11 Mot. Hr'g, Gov't Ex. 1.

[72]The Court further notes that by the time Petitioner consented to accompany the troopers to the KDOT office, where he consented to another search of the vehicle, Trooper Hogelin had observed post-manufacture alterations to the Pacifica, which, based on his training and experience, he associated with a compartment used to conceal drugs. (Doc. 87, Tr. 11/23/11 Mot. Hr'g at 33–37).  Hogelin made this assessment before asking Petitioner to accompany the troopers to the KDOT office, which gave him probable cause to search the vehicle without a warrant or consent from Petitioner.  *See United States v. Jurado-Vallejo*, 380 F.3d 1239 (10th Cir. 2004).

manner that prejudiced Petitioner, as required under *Strickland*.[73]

Finally, the Court notes that it is of no legal consequence that Trooper Hogelin did not intend to arrest Petitioner for driving on a suspended license.  Contrary to Petitioner's understanding, the trooper's subjective intentions are irrelevant to any Fourth Amendment issues presented in his motion.[74]  Petitioner's first request for relief is denied.

### B.       Objections to Criminal History Score

Next, Petitioner contends that his counsel was ineffective for failing to object to three separate criminal history scores in the PSIR.  The Court addresses each criminal history score.

### 1.       Paragraph 50

The PSIR assigned Petitioner one criminal history point under U.S.S.G. § 4A1.1(c) for his 2003 driving-while-suspended conviction, for which he received a sentence of thirty days in jail.  Petitioner asserts that counsel ineffectively failed to challenge Paragraph 50, because this conviction should not have scored any criminal history points under § 4A1.1(c) as he only served twenty-eight days' custody on the sentence, which he argues cannot be counted as a prior sentence.  In support of his argument, Petitioner relies on the language in § 4A1.2(c)(1)(A), which states that prior sentences of some misdemeanor offenses are counted only if the sentence was "a term of imprisonment of at least thirty days."  Petitioner's argument is incorrect.

---

[73] *DeLozier v. Sirmons*, 531 F.3d 1306, 1323 (10th Cir. 2008) ("Of course, counsel is not ineffective for failing to make a motion that would not succeed.").

[74] *See Devenpack v. Alford*, 543 U.S. 146, 153 (2004) ("As we have repeatedly explained, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.  The Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent.  Evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer.") (internal quotations and citations omitted) (emphasis added).

Because Petitioner was convicted of this offense and the court pronounced a thirty-day sentence for the offense, it counts as a prior sentence under § 4A1.1(c).[75]  The fact that Petitioner only served twenty-eight days of this sentence is irrelevant because criminal history points are calculated based on the sentence pronounced, not the time the defendant actually serves on that sentence.[76]  The records proffered by Petitioner show that the twenty-eight day term was not a "pronounced sentence," but rather, it was a credit of twenty-eight days on the thirty-day pronounced sentence.[77]  Thus, because the pronounced sentence was a term of imprisonment of at least thirty days, this misdemeanor conviction was countable under § 4A1.2(c)(1)(A) and § 4A1.1(c).[78]  Accordingly, the PSIR correctly assessed one point to Petitioner for this conviction, and thus counsel did not deficiently fail to challenge the calculation.  As such, Petitioner suffered no prejudice from counsel's decision not to object to Paragraph 50.

### 2.      Paragraph 52

The PSIR assigned Petitioner two criminal history points under § 4A1.1(b) for his 2005 conviction for driving while ability impaired because Petitioner received "a sentence of imprisonment of at least sixty days" for the conviction.[79]  The records of the conviction show

---

[75]*See* U.S.S.G. § 4A1.2(a)(1) (2011) ("The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt").

[76]U.S.S.G. § 4A1.2 cmt. n.2 (2011) ("for the purposes of applying § 4A1.1(a), (b), or (c), the length of a sentence of imprisonment is the stated maximum . . . . That is, criminal history points are based on the sentence pronounced, not the length of time actually served.").

[77]Doc. 111-7 (showing 9/25/03 entry of "CREDIT TIME SERVED").

[78]The Court notes that, had Petitioner's sentence been suspended, driving-while-suspended is an offense that normally does not score.  *See* § 4A1.2(c)(1)(A).

[79]U.S.S.G. § 4A1.1(b) (2011).

that Petitioner was originally sentenced on October 6, 2005, to "30 DAYS JAIL CONSECUTIVE WITH 02M720 [referenced in paragraph 49 of the PSIR] and 05T644 [referenced in paragraph 54 of the PSIR]."[80]  Subsequently, on September 27, 2007, Petitioner violated his probation and the court sentenced him to a second thirty-day sentence, to run concurrently with these cases.[81]  Because the court imposed two separate thirty-day sentences that totaled sixty days, the conviction was scored with two points under § 4A1.1(b).

Petitioner asserts that counsel ineffectively failed to challenge Paragraph 52, arguing that this conviction should have been scored one point under § 4A1.1(e) because the court imposed the thirty-day revocation sentence concurrently with the original offenses.  Petitioner is correct that he was not sentenced to at least sixty days.  The record shows that Petitioner was originally ordered to serve twenty days of custody, with two years probation; upon revocation of probation, he received an additional thirty days, for a total sentence of fifty days.[82]  Because Petitioner's total sentence was not "at least 60 days," it appears the score should have been one criminal history point instead of two.[83]  Nevertheless, Petitioner was not prejudiced by this calculation, as even with this reduction, his criminal history would not have changed from a  category IV.[84]

### 3.    Paragraph 53

Finally, the PSIR assigned one criminal history point under § 4A1.1(c) for Petitioner's

---

[80]Doc. 111, Ex. 7 at 7.

[81]*See id.*

[82]U.S.S.G. § 4A1.2(c)(1)(A).

[83]U.S.S.G. § 4A1.1(b).

[84]U.S.S.G. Ch. 5, Part A (stating a a total criminal history score of 4, 5, or 6 points establishes a criminal history category of III; a total criminal history score of 7, 8, or 9 points establishes a criminal history category of IV).

2005 theft conviction, for which he received a fine but no sentence of imprisonment.  Petitioner argues that counsel ineffectively failed to challenge this score, arguing that this conviction should not have scored any points because the sentence did not have a "supervisory component" as required to qualify as a "criminal justice sentence," nor had he been convicted of the offense to be counted as if it constituted a prior sentence under § 4A1.1(c).  Petitioner's argument is without merit.

Petitioner was convicted of the offense because he plead guilty to it; under § 4A1.2(a)(4), "'Convicted of an offense' . . . means that the guilt of the defendant has been established, whether by guilty plea, trial or plea of *nolo contendre*."[85]  Petitioner is correct that the sentence imposed—the $75.00 fine—did not qualify as a "criminal justice sentence" under § 4A1.1(d) because the sentence did not have a supervisory component.  This does not bear on resolution of Petitioner's claim, however, because the PSIR imposed the criminal history point pursuant to § 4A1.1(c), which does not require that a prior sentence be a "criminal justice sentence."[86] Because Petitioner was convicted of theft and received a fine as his sentence, it counts as a prior sentence under § 4A1.1(c).[87]  Accordingly, because the PSIR correctly attributed one point to Petitioner for his theft conviction, counsel did not deficiently fail to challenge the calculation and he suffered no prejudice by such alleged failure.  Petitioner's second claim of ineffective assistance is denied.

---

[85]U.S.S.G. § 4A1.2(a)(4).

[86]*See* Doc. 72, PSIR ¶ 53; U.S.S.G. § 4A1.1(c)(2011) ("Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.").

[87]*See* U.S.S.G. § 4A1.2(a)(1) (2011) ("The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt"); *id.* § 4A1.2(c) (sentences for misdemeanor offenses are counted unless specifically excluded and theft is not excluded); *see also United States v. Foote*, 705 F.3d 305, 307 (8th Cir. 2013) ("The Guidelines are explicitly designed to apply to prior sentences in which only a fine was ordered.").

### C.       Open Plea

Petitioner contends that his attorney provided ineffective assistance by failing to "move [him] to accept an open plea that would maintain his appellate rights and provide him the opportunity to capitalize on a three point reduction for acceptance of responsibility" under § 3E1.1 of the Guidelines.[88]  According to Petitioner, when presented the plea offer, he rejected it for not preserving his appellate rights.  Petitioner claims he went so far as to say, "So, Mr. Lake, you can otherwise get my appellate rights incorporate into a contract or I don't want to plead."  Petitioner contends that instead of proceeding to trial, he would have accepted an open plea offer that would have allowed him to maintain his appellate rights while also providing a three-point sentencing reduction for acceptance of responsibility.  The Government contends that any open plea deal would have resulted in the loss of appellate rights unless approved by both the Government and the District Court.  Additionally, the Government contends that it would not have recommended a full three-point reduction for acceptance of responsibility.

The Court finds that, even assuming counsel's assistance was deficient by failing to advise him of the option of entering an open plea, Petitioner has failed to prove he was prejudiced.  First, the Court notes that waivers of appellate rights and collateral attack rights are not illegal, as Petitioner maintains, and the Tenth Circuit has upheld both types of waivers as legal and enforceable.[89]  Further, contrary to Petitioner's understanding, an open plea does not

---

[88]Doc. 110 at 17.  An "open" or "blind" guilty plea is a plea made by the defendant without the benefit of a plea agreement entered into by the government.  *See United States v. Navarro*, 476 F.3d 188, 189 (3d Cir. 2007).

[89]*See United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001) (holding "a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver," but "[c]ollateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable"); *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam).

automatically preserve a defendant's right to appeal.[90]  A plea of guilty generally forecloses the rights of the defendant to a subsequent appeal.[91]  Once a defendant has entered a plea of guilty, he may not raise subsequent claims regarding the deprivation of his constitutional rights occurring before the plea.[92]  Fed. R. Crim. P. 11(a)(2) allows a defendant to enter a conditional guilty plea "reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion."[93]  If the defendant succeeds on appeal, this plea may be withdrawn.[94]  However, a conditional guilty plea requires the acceptance of the plea by both the district court and the prosecution.[95]  Duston Slinkard, the Assistant United States Attorney who represented the Government in this matter, has sworn in his affidavit that he would have opposed any conditional plea preserving Petitioner's right to appeal without qualification under Rule 11(a)(2).[96]  Slinkard explained that "[t]he government sought the appeal and collateral attack waiver, both as part of the proposed plea agreement and sentencing agreement, to bring finality to this prosecution, to promote judicial economy, and to preserve prosecutorial resources; a conditional plea under Rule 11(a)(2) would not have furthered these goals."[97]

---

[90]*See, e.g., United States v. Adigun*, 703 F.3d 1014, 1022 (7th Cir. 2012) (holding defendant's unconditional "open" plea to drug charges was not a conditional plea under Rule 11(a)(2), so defendant was barred from appealing district court's rulings on defendant's pre-plea suppression motions).

[91]*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

[92]*Id.*

[93]Fed. R. Crim. P. 11(a)(2)

[94]*Id.*

[95]*Id.*

[96]Doc. 116, Ex. B ¶ 4.

[97]*Id.*

Further, Petitioner's argument with respect to a more favorable sentence is flawed.  First, Petitioner's argument that he would have received a three-point reduction for acceptance of responsibility is speculative.  While it is likely this Court would have allowed a two-point reduction under U.S.S.G. § 3E1.1(a), AUSA Slinkard has averred that the Government would not have recommended the additional point under § 3E1.1(b) because Petitioner did not "timely" notify the Government of his intention to enter a plea, as the Government was required to unnecessarily and inefficiently contest several frivolous motions Petitioner filed after this Court denied the motion to suppress.[98]

Because Petitioner has failed to show establish that he would have likely been permitted to maintain his appellate rights and receive a lower sentence but for counsel's alleged ineffectiveness for failure to advise him of an open plea option, he has not established prejudice, and thus this claim must be denied.

---

[98]*Id.* ¶ 5 (identifying Petitioner's *pro se* Motion for Reconsideration (titled "Notice of Appeal") (Doc. 30); Petitioner's *pro se* Motion to Compel Counsel to Acquire and Produce (Doc. 33); and Petitioner's Motion for Reconsideration (Doc. 51).

## IV.     Certificate of Appealability

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[99]  A petitioner may satisfy his burden only if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[100]  A petitioner is not required to demonstrate that his appeal will succeed to be entitled to a COA.  He must, however, "prove something more than the absence of frivolity or the existence of mere good faith."[101]  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims.  In fact, the statute forbids it."[102]  For the reasons detailed in this Memorandum and Order, Petitioner has not made a substantial showing of the denial of a constitutional right, and the Court denies a COA as to its ruling dismissing his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Richard Sanchez's Motion to Vacate Pursuant to 28 U.S.C. § 2255 (Doc. 110) is DENIED without an evidentiary hearing.  The Court also denies Petitioner a COA.

**IT IS SO ORDERED.**

---

[99]28 U.S.C. § 2253(c)(2).  The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability.  *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[100]*Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).

[101]*Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

[102]*Id.* at 336; *see also United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005).

Dated: <u>April 6, 2016</u>

<u> S/ Julie A. Robinson </u>
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE